**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:00-CR-147-GCM-DSC-1**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    **v.**

**MOHAMAD YOUSSEF HAMMOUD,**
**aka Ali A.A. Abousaleh**
**aka Ali A.A. Albousaleh**

        **Defendant-Petitioner.**

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE**</u>
<u>**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**</u>

<u>**(HEARING REQUESTED)**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iv

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

ARGUMENT ......................................................................................................................5

    I.     MR. HAMMOUD HAS THE STATUTORY RIGHT TO PETITION FOR
          A REDUCED SENTENCE UNDER THE FIRST STEP ACT............................5

         A.     This Court Should Consider Extraordinary and Compelling Reasons
              Beyond Those Identified by U.S.S.G. § 1b1.13 and Its Commentary
              .......................................................................................................7

    II.    COURTS REGULARLY GRANT COMPASSIONATE RELEASE
          WHEN DEFENDANTS WOULD BE SUBJECT TO A MUCH SHORTER
          SENTENCE IF SENTENCED TODAY. ................................................................7

         A.     Courts May Reduce Sentences for Disparities in Sentencing Even
              When There is No Change in Sentencing Law...........................................9

         B.     Courts Consider Mean and Median Sentences of Defendants with
              Similar Records.........................................................................................11

    III.   "EXTRAORDINARY AND COMPELLING REASONS" WARRANT A
          REDUCTION IN MR. HAMMOUD'S SENTENCE . ...................................... 12

         A.     Mr. Hammoud's 30-Year Sentence Is Vastly Disproportionate in
              Comparison to Other Defendant's Sentenced to Less than Five
              Years For Similar Crimes .........................................................................12

         B.     Mr. Hammoud's U.S.S.G. § 3A1.4 Terorrism Sentence
              Enhancement Makes His Sentence Even More Disproportionate ............14

         C.     Terrorist Defendants with Much More Egregious Conduct Have
              Been Granted Compassionate Release........................................................16

         D.     Under § 3553(a) Mr. Hammoud Is Qualified for Release Based
              Upon Time Served, and Mr. Hammoud is Not a Danger to the
              Community, Consistent with U.S.S.G. § 1B1.13......................................17

         E.     Hammoud Additionally Suffers from an Ongoing Medical
              Condition that Has Not Been Resolved in Prison......................................20

CONCLUSION..........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babb v. United States*,
   No. ELH-04-0190, 2021 U.S. Dist. LEXIS 105829 (D. Md. June 4, 2021)................... *passim*

*Blakely v. Washington*,
   542 U.S. 296 (2004)............................................................................................................3

*Hammoud v. United States*,
   543 U.S. 1097 (2005)......................................................................................................2, 3

*Kimbrough v. United States*,
   552 U.S. 85 (2007)...........................................................................................................15

*United States v. Adeyemi*,
   470 F. Supp. 3d 489 (E.D. Pa. 2020) ...................................................................... *passim*

*United States v. Alhaggagi*,
   372 F. Supp. 3d 1005 (N.D. Cal. 2019) ........................................................................14, 15

*United States v. Amina Farah Ali*,
   No. 10-187 (01) (MJD), 2021 U.S. Dist. LEXIS 73320 (D. Minn. Apr. 16,
   2021) ............................................................................................................................17, 20

*United States v. Bary*,
   No. 98-cr-1023 (LAK), (S.D.N.Y. Oct. 7, 2020)..................................................................16

*United States v. Brooker*,
   976 F.3d 228 (2d Cir. 2020)..................................................................................................7

*United States v. Brown*,
   457 F. Supp. 3d 691 (S.D. Iowa 2020) ............................................................................9, 15

*United States v. Dais*,
   482 F. Supp. 3d 800 (E.D. Wis. 2020).................................................................................15

*United States v. Eccleston*,
   2021 U.S. Dist. LEXIS 108877 (D.N.M. June 10, 2021) .................................................11, 12

*United States v. El-Hanafi*,
   460 F. Supp. 3d 502 (S.D.N.Y. 2020)...................................................................................16

*United States v. Gonzales*,
   520 U.S. 1 (1997)..................................................................................................................9

Case 3:00-cr-00147-GCM-DSC   Document 1186   Filed 02/11/22   Page 4 of 30

*United States v. Graves*,
    908 F.3d 137 (5th Cir. 2018) ...........................................................................7

*United States v. Gunn*,
    980 F.3d 1178 (7th Cir. 2020) .........................................................................7

*United States v. Hasanoff*,
    10-cr-162, 2020 U.S. Dist. LEXIS 199816 (S.D.N.Y. Oct. 27, 2020) ...................16

*United States v. Hassoun*,
    470 F. Supp. 3d 804 (N.D. Ill. 2020) ...........................................................16, 19

*United States v. Hawo Mohamed Hassan*,
    No. 10-187 (02) (MJD), 2020 U.S. Dist. LEXIS 165638 (D. Minn. Sep. 10,
    2020) ...........................................................................................................17

*United States v. Haynes*,
    456 F. Supp. 3d 496 (E.D.N.Y. 2020) ..................................................... *passim*

*United States v. Hope*,
    No. 90-cr-06108-KMW-2, 2020 U.S. Dist. LEXIS 86395 (S.D. Fla. April 10,
    2020) .........................................................................................................9, 15

*United States v. Jones*,
    980 F.3d 1098 (6th Cir. 2020) ......................................................................7

*United States v. Jumaev*,
    2018 U.S. Dist. LEXIS 119916 (D.C. Col. July 18, 2018)................................14, 15

*United States v. McCoy*,
    981 F.3d 271 (4th Cir. 2020) ............................................................... *passim*

*United States v. McDonell*,
    513 F. Supp. 3d 752 (E.D. Mich. 2021)..........................................................9, 16

*United States v. McGee*,
    992 F.3d 1035 (2021)......................................................................................7

*United States v. Muhammad*,
    No. 20-7520, 2021 U.S. App. LEXIS 31582 (4th Cir. Oct. 20, 2021) ....................5

*United States v. Payton*,
    No. PJM 06-341, 2021 U.S. Dist. LEXIS 46804 (D. Md. Mar. 10, 2021) ............10

*United States v. Rana*,
    No. 09 CR 830-8, 2020 U.S. Dist. LEXIS 208638 (N.D. Ill. June 9, 2020).....................16, 21

*United States v. Redd*,
444 F. Supp. 3d 717 (E.D. Va. 2020) ....................................................................8, 9, 15, 20

*United States v. Reyes-Hernandez*,
624 F.3d 405 (7th Cir. 2010) ...............................................................................................15

*United States v. Robles*,
2021 U.S. Dist. LEXIS 150046 (S.D.N.Y. Aug. 10, 2021)................................................9, 15

*United States v. Shkambi*,
993 F. 3d 388 (5th Cir. 2021) ................................................................................................7

*United States v. Tajideen*,
1:17-cr-046 (D.D.C. May 28, 2020) ......................................................................................17

*United States v. Wilkerson*,
No. 5:96-CR-167-1H, 2021 U.S. Dist. LEXIS 52048 (E.D.N.C. Mar. 19,
2021) .................................................................................................................................9, 15

**Statutes**

18 U.S.C. § 924(c) ...............................................................................................................9, 10, 14

18 U.S.C. § 2339B ...................................................................................................................3, 13

18 U.S.C. § 2339B(a)(1) ..............................................................................................................3

18 U.S.C. § 3553(a) ............................................................................................................. *passim*

18 U.S.C. § 3553(a)(2)(D) ..........................................................................................................21

18 U.S.C. § 3582(c)(1)(A) .................................................................................................... *passim*

18 U.S.C. § 3582(c)(1)(A)(i) .....................................................................................................5, 7

Crimes Against Charitable Americans Act of 2001, Pub L. No. 107-56, 115 Stat.
272 (2001).................................................................................................................................3

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ............................5, 10, 11, 15

Pub. L. No. 98–473, 98 Stat. 1837S, 1998-99 (1984).....................................................................5

Pub. L. No. 114- 23, 129 Stat. 268 (2015)......................................................................................3

U.S.S.G. § 1B1.13.....................................................................................................................7, 18

U.S.S.G. § 1B1.13, cmt. n.1......................................................................................................6, 18

U.S.S.G. § 3A1.4 ................................................................................................................. 14, 15, 18

**Other Authorities**

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of
    Legal Texts 56 (2012)..................................................................................................7

Mohamad Youssef Hammoud Sentenced to 30 Years in Terrorism Financing
    Case, U.S. Immigration and Customs Enforcement (Jan. 27, 2011),
    https://www.ice.gov/news/releases/mohamad-youssef-hammoud-sentenced-
    30-years-terrorism-financing-case .............................................................................2

## INTRODUCTION

Mr. Mohamad Y. Hammoud, by counsel, asks this Court to grant him compassionate release by reducing his term of imprisonment pursuant to 18 U.S.C. 3582(c)(1)(A)[1] due to extraordinary and compelling reasons warranting compassionate release.

Among other grounds, this Court is empowered to reduce a prisoner's sentence when there exists a drastic disparity in the defendant's sentence versus what he would have been sentenced today. *E.g., United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). Notably, Mr. Hammoud, who is now 48 years old, was arrested in July of 2000 and has served over 21 years of his 30-year sentence for a non-violent crime. In contrast, the average defendant convicted for similar crimes today would be sentenced only to 58 months—six times less than Mr. Hammoud's sentence. *See* discussion *infra* Section II.a. This comparison includes even violent offenders, which Mr. Hammoud is not.

Mr. Hammoud's recidivism risk is immeasurably small. He has no prior criminal history and would be deported to Lebanon upon release. Mr. Hammoud has demonstrated substantial rehabilitation given his educational achievements while imprisoned, his efforts to build cross-cultural understanding and tolerance among inmates, and his history of only minimal infractions during his long imprisonment. Upon release, Mr. Hammoud has several job opportunities available to him in Lebanon and a family network to support him. Mr. Hammoud's mother is now 87 years old and in ill health. Mr. Hammoud wants to see his mother, for her to see him home before she dies, and to build a productive life outside prison before he is too old to do so.

Further, Mr. Hammoud suffers from a recurring skin condition causing him agonizing pain

---

[1] For the purposes of this motion and memorandum, the terms "motion to reduce sentence" and "motion for compassionate" release will be used interchangeably.

that is exacerbated by gaps in medical treatment at Terre Haute, the Federal Correctional Institution were Mr. Hammoud currently resides.  A sentence reduction would allow him to quickly seek a medical specialist to address his inflamed skin condition.  Given Mr. Hammoud's disproportionately long sentence, conviction for a non-violent crime, and substantial rehabilitation while in prison, health concerns and age, there are extraordinary and compelling reasons warranting reducing Mr. Hammoud's sentence.

## FACTUAL BACKGROUND

Mr. Hammoud has been imprisoned since 2000—nearly twenty-two years.  He has no prior criminal record.  Mr. Hammoud was originally sentenced under the then-mandatory Sentencing Guidelines to 155 years imprisonment for a combination of immigration fraud, cigarette tax evasion, money laundering, and conspiracy to provide material support to a designated foreign terrorist organization ("DFTO").  The focus of the trial was, however, whether Mr. Hammoud gave and conspired to give $3,500 to Hezbollah.  This material support charge, which triggered Sentencing Guideline 3A1.4, primarily drove his final sentence length.  His Section 3A1.4 charge resulted in a 12-level sentencing enhancement that placed Mr. Hammoud in a criminal history category VI.  *See Hammoud v. United States*, No. (3:14-cv-76-GCM), 2015 U.S. Dist. LEXIS 166421, at *4 (W.D.N.C. Dec. 10, 2015).

Although Mr. Hammoud's conduct predated the September 11, 2001 terrorist attack,[2] his trial was the first material support or terrorism trial in the nation post 9/11.[3]  He was the first person

---

[2] *See* Am. J., ECF No. 1134 at 3 (indicating the date of the offense related to Mr. Hammoud's material support crimes concluded on July 20, 2000).

[3] *See* Mohamad Youssef Hammoud Sentenced to 30 Years in Terrorism Financing Case, U.S. Immigration and Customs Enforcement (Jan. 27, 2011), https://www.ice.gov/news/releases/mohamad-youssef-hammoud-sentenced-30-years-terrorism-financing-case.

2

ever convicted of a federal material support charge in the United States.

In 2005, the Supreme Court vacated Mr. Hammoud's 155-year sentence based upon its decision in *Blakely v. Washington*, 542 U.S. 296 (2004). *Hammoud v. United States*, 543 U.S. 1097, 1098 (2005). The Fourth Circuit remanded to this Court after reiterating its affirmation of this Court's Sentencing Guidelines calculation. On resentencing, evidence of ineffective assistance of counsel, including counsel's late filing that waived all objections to the PSR, was presented. This Court applied the Mandate Rule, resulting in the application of the same U.S. Sentencing Guideline calculation. At resentencing, the Court stated its intent was to sentence Mr. Hammoud to 30 years of imprisonment—the statutory maximum at the time of his conviction. Am. J., ECF No. 1134 at 3. Mr. Hammoud has now served almost 22 years of his 30-year sentence—more than twice the statutory maximum under 18 U.S.C. § 2339B at the time of his offense.[4] Mr. Hammoud currently serves his sentence in Terre Haute, a medium security federal correctional institution located in Indiana.[5]

Throughout Mr. Hammoud's over two decades in prison, he has been a model inmate. Mr. Hammoud has faced no material disciplinary issues. Mr. Hammoud's Case Manager, Rebekka Eisele, has classified him as a "level 6" low-security prisoner and wrote that he poses "minimum

---

[4] Mr. Hammoud was first sentenced on counts 36, 43, 49, and 71 to 241 months to run concurrently with each other and to run consecutively with the 180 months sentence imposed on counts 72 and 78, which were to run currently with each other, and 120 months on counts 2, 54, and 55 to run concurrently with each other and concurrently with all other counts. Resentencing Tr., January 27, 2011 at 236. The Court corrected the sentence to reduce the sentence on counts 72 and 78 to 120 months, which was the statutory maximum at the time of Mr. Hammoud's offence. *Id.* at 239. Prior to the statutory amendment to 28 U.S.C. § 2339B(a)(1) in 2001 (Pub. L. No. 107–56, 115 Stat. 272 (2001)) and during the time of Mr. Hammoud's offense conduct (September 1999 and July 2000), Am. J., ECF No. 1134 at 3, the statutory maximum was 10 years. *See* Pub. L. No. 114–23, 129 Stat. 268 (2015) (amending (a)(1) by substituting 20 years for 15 years); Pub. L. No. 107–56 (amending (a)(1) by substituting 15 years for 10 years).

[5] Mr. Hammoud is scheduled to be released on June 30, 2026. *See* Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/. (Mr. Hammoud is inmate no. 16449-058).

risk" on his Male Custody Classification Form. Pearkes Decl. Ex. 1.[6]  In contrast, many of the prisoners in Terre Haute are high and maximum-risk prisoners.  Mr. Hammoud is also bright and intellectually curious.  While in prison Mr. Hammoud completed over 70 educational courses, ranging in topics from Hyperinflation to the Treaty of Paris, Physics, Biology, and Philosophy. Pearkes Decl. Ex. 2.  He is nearing completion (in one semester) of an Associate's degree in Psychology in addition to the Associate's degree in Business Management he earned at Ashworth College. *Id.*  He is always learning and seeking to better himself in any way he can.  Further, Mr. Hammoud has had a positive influence on other inmates and has worked tirelessly to foster inter-faith understanding.  In an article written by an inmate at Terra Haute and published through The Muslim Link, Mr. Hammoud was described as "an inspiration of hope" to other inmates.  Pearkes Decl. Ex. 3.  Mr. Hammoud has also made significant efforts to assist in anti-terrorism enforcement.

Mr. Hammoud, however, has been suffering from a painful recurring skin condition that has been exacerbated by prison, particularly in the summer months when heat and humidity combine.  Identified by his doctors as dermatitis and eczema due to an unspecified cause, Mr. Hammoud presents with multiple severe and painful rashes.  During flare ups, Mr. Hammoud describes his skin condition as "tantamount to torturing" and that he "writhes in pain unable to sleep."  Although Mr. Hammoud has requested medical attention multiple times, his condition has not been resolved through the common medications prescribed to him.  Further, Mr. Hammoud's limited access to dermatologists at the prison have contributed to his pain and discomfort and the failure to bring his condition under control.  For nearly one year the prison sent him to general

---

[6] Mr. Hammoud had a single incident of using a cell phone, which he used to call his ailing mother who, due to age and illness, has been unable ever to travel to see her son since his incarceration in July 2000.

4

practitioners and nurses.  In April 2021, the prison finally arranged for Mr. Hammoud to see a dermatologist.  However, the prison did not give the dermatologist Mr. Hammoud's medical records, which documented the severe flare-ups he had experienced the previous summer and early fall.  In addition, his skin condition was tempered by the cool weather at the time of the visit.  The dermatologist was unable to evaluate his condition and prescribe him an appropriate treatment.  Mr. Hammoud continues to experience painful skin flare-ups and has yet to receive an effective treatment.

As an inmate approaching 50 years old, Mr. Hammoud is also at significant risk of severe illness with permanent consequences or death from COVID-19.  Recent BOP data states that there have been 282 inmate deaths, and 7,851 inmates currently have the disease.[7]

## ARGUMENT

### I.  MR. HAMMOUD HAS THE STATUTORY RIGHT TO PETITION FOR A REDUCED SENTENCE UNDER THE FIRST STEP ACT.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 3582(c)(1)(A), grants the Court the authority to reduce a sentence when "extraordinary and compelling reasons" are present, as they are here.  As a result of the First Step Act, a court need not rely upon a motion by the Director of the BOP.  18 U.S.C. § 3582(c)(1)(A)(i); *see* Pub. L. No. 98–473, 98 Stat. 1837S, 1998-99 (Oct. 12, 1984).  Instead, a court may now reduce a sentence "upon motion of the defendant" in two circumstances: (i) when the defendant has exhausted his administrative remedies to appeal the BOP declining to bring a motion or (ii) when 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); *see, e.g.*, *United States v. Muhammad*, No. 20-

---

[7]  *See Federal Bureau of Prisons*, https://www.bop.gov/coronavirus/ (accessed January 27, 2022).

7520, 2021 U.S. App. LEXIS 31582, at *6 (4th Cir. Oct. 20, 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies.").

On June 24, 2021, counsel for Mr. Hammoud sent a request for a sentence reduction on his behalf to Warden T.J. Watson at the U.S. Penitentiary ("USP") in Terre Haute, Indiana, where Mr. Hammoud is being held. Pearkes Decl. Ex. 4. More than thirty days have passed since the warden's receipt of Mr. Hammoud's request[8] and the BOP has not filed a motion on his behalf. Further, the warden responded to Mr. Hammoud in a letter dated September 17, 2021, stating the BOP would not pursue a request for compassionate release on Mr. Hammoud's behalf. Pearkes Decl. Ex. 5. Accordingly, Mr. Hammoud brings this motion directly under the amended 18 U.S.C. § 3582(c)(1)(A).

Under § 3582(c)(1)(A), a court may reduce a petitioning prisoner's sentence if the "court . . . finds that . . . extraordinary and compelling reasons warrant such a reduction," and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and court considers the § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has guided that "extraordinary and compelling" reasons warranting release may be based on the following: (A) the prisoner's medical condition; (B) the prisoner's age; (C) family circumstances; or (D) "[o]ther [r]easons," defined as "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n.1; *e.g.*, *United States v. Haynes*, 456 F. Supp. 3d 496, 508 (E.D.N.Y. 2020).

---

[8] Based on the tracking information of the package containing Mr. Hammoud's request for Warden Watson to reduce his sentence, Mr. Hammoud's request was confirmed delivered on June 25, 2021 (UPS Overnight Mail tracking number 1Z7X10752497483456).

6

**A.    This Court Should Consider Extraordinary and Compelling Reasons Beyond Those Identified by U.S.S.G. § 1b1.13 and Its Commentary.**

The Fourth Circuit has made clear that a court should "consider *any* extraordinary and compelling reason for release that a defendant might raise"—not just the factors specifically enumerated by the Sentencing Commission. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)). The Fifth Circuit's decision in *United States v. Shkambi*, 993 F. 3d 388 (5ᵗʰ Cir. 2021), which relies upon *McCoy*, is also instructive. That case holds that because the application note to U.S.S.G. § 1B1.13 limits that application of its policy statement to motions filed by the BOP, a district court "***cannot*** rely on pieces of text in an otherwise inapplicable policy statement." *Id.* at 392 (emphasis added) (*citing McCoy*, 981 F.3d at 282). The *Shkambi* decision is compelling in its logic: "text may not be divorced from context." *Id.* (quoting *United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."). The "context of the policy statement shows that **it applies only to motions filed by the BOP**." *Shkambi,* 993 F.3d. at 392 (emphasis added).

"The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." *Id.* at 393 (*citing United States v. McGee*, 992 F.3d 1035, 1050 (2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *McCoy*, 981 F.3d at 284; *United States v. Jones*, 980 F.3d 1098, 1111(6ᵗʰ Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

**II.    COURTS REGULARLY GRANT COMPASSIONATE RELEASE WHEN DEFENDANTS WOULD BE SUBJECT TO A MUCH SHORTER SENTENCE IF SENTENCED TODAY.**

"*[A]ny* extraordinary and compelling reason" includes a large sentencing disparity between

7

the prisoner and other defendants convicted of the same crime. *See, e.g. United States v. Redd*, 444 F. Supp. 3d 717, 722 (E.D. Va. 2020) (granting defendant's motion to reduce his sentence brought "based on extraordinary and compelling circumstances with respect to his excessive term of imprisonment and his extensive rehabilitation while incarcerated"). In *McCoy*, the Fourth Circuit affirmed the district court' grant of a sentence reduction primarily due to the dramatic disparity in the defendant's sentence versus the sentence that would, on average, have been imposed today, in light of changes in sentencing law. *United States v. McCoy*, 981 F.3d 271, 285-88 (4th Cir. 2020). Specifically, the Fourth Circuit emphasized "the 'incredible length of the [32-year] mandatory sentence imposed,' which far exceeded that necessary to 'achieve the ends of justice.' If sentenced today, . . . McCoy likely would be subjected to less than half that sentence— a disparity of over 200 months." *Id.* at 278 (citation omitted). The court also placed weight on that McCoy's young age at the time of the offense "with no relevant criminal history," making stacked sentencing particularly inappropriate. *Id.* Lastly, the court considered "McCoy's rehabilitation, shown through his many educational and vocational achievements and his [restitution] payments." *Id.* Further, the court emphasized that a sentence reduction must take into account "the substantial sentences the defendants already had served at the time of their motions— from 17 to 25 years—[meaning] that each defendant had spent close to or more than half his life in prison." *McCoy*, 981 F.3d at 286 (citations omitted). In the essentials of its sentencing analysis, *McCoy* is indistinguishable from Mr. Hammoud's case. *See* discussion *infra* Section III.A. Moreover, *McCoy* instructs that because the BOP used its compassionate release power "so 'sparingly'" Congress removed the BOP from the equation for the very purpose of relaxing the administration of the standard and making compassionate release more available. *Id.* at 275.

Consistent with *McCoy*, many courts have granted sentence reductions based primarily on

8

gross disparities in prisoners' original sentences versus what they would be sentenced today, combined with rehabilitation while incarcerated:

> *Redd*, 444 F. Supp. 3d at 728 (reduced from 50.25 years to 20.25 years);

> *United States v. Wilkerson*, No. 5:96-CR-167-1H, 2021 U.S. Dist. LEXIS 52048, at *5 (E.D.N.C. Mar. 19, 2021) (reduced from life imprisonment plus 45 years to time served);

> *Babb v. United States*, No. ELH-04-0190, 2021 U.S. Dist. LEXIS 105829, at *29 (D. Md. June 4, 2021) (reducing sentence from life imprisonment plus 5 years to 30 years);

> *United States v. Haynes*, 456 F. Supp. 3d 496 (E.D.N.Y. 2020) (reducing sentence from 46.5 years to time served);

> *United States v. Hope*, No. 90-cr-06108-KMW-2, 2020 U.S. Dist. LEXIS 86395, at *3 (S.D. Fla. April 10, 2020) (reducing sentence from life imprisonment to time served);

> *United States v. Brown*, 457 F. Supp. 3d 691, 699 (S.D. Iowa 2020) (reducing sentence from 42.5 years to time served);

> *United States v. Robles*, 2021 U.S. Dist. LEXIS 150046, at *33 (S.D.N.Y. Aug. 10, 2021) (deciding to reduce 35-year sentence once defendant exhausted administrative remedies);

> *United States v. McDonell*, 513 F. Supp. 3d 752, 757 (E.D. Mich. 2021) (reducing sentence from 107 years and 1 month to 20 years); and

> *United States v. Adeyemi*, 470 F. Supp. 3d 489, 520 (E.D. Pa. 2020) (reducing sentence from 32 years and 1 month to time served).

### A. Courts May Reduce Sentences for Disparities in Sentencing Even When There Is No Change in Sentencing Law.

*McCoy* involved an eliminated mandatory sentence-stacking under 18 U.S.C. § 924(c); however, its broad principle of considering the length of a defendant's sentence versus what the defendant would be sentenced today, sentencing disparities, and its recognition of congressional intent to reduce prison time when there is a low risk of recidivism must guide courts in their consideration of motions to reduce a sentence. *See McCoy*, 981 F.3d at 284 (citation omitted) (holding that "district courts are 'empowered ... to consider any extraordinary and compelling reason for release that a defendant might raise'"); *see also United States v. Gonzales*, 520 U.S. 1, 5, (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some

indiscriminately of whatever kind.'").

Further, courts applying *McCoy* have held that gross sentencing disparities, in of itself, warrant sentence reductions. *See, e.g. Babb v. United States*, No. ELH-04-0190, 2021 U.S. Dist. LEXIS 105829, at *29 (D. Md. June 4, 2021) (holding that "a gross sentencing disparity may constitute an extraordinary and compelling reason to grant compassionate release"). As such, Fourth Circuit district courts have followed *McCoy*'s reasoning to <u>other</u> types of disparities in sentencing beyond a change in the statute that was that basis of the sentence affecting the prisoner. *See United States v. Payton*, No. PJM 06-341, 2021 U.S. Dist. LEXIS 46804, at *4 (D. Md. Mar. 10, 2021) (expanding *McCoy's* holding to instances of disparities between the defendant and a co-defendant's sentence).

Courts have also reduced sentences due after considering the length of a sentence and amount of time served, along with other factors—regardless of change in sentencing law. For example, in *United States v. Adeyemi*, the court considered how pursuant to the First Step Act, Adeyemi's sentence today would be lower after the change in § 924(c)'s sentence stacking, and noted the substantial case law granting compassionate release in light of gross disparities in sentencing post-amendment of the Act. 470 F. Supp. 3d 489, 520 (E.D. Pa. 2020). After finding that a change in § 924(c)'s stacking alone did not warrant an extraordinary and compelling reason on its own, *id.* at 524-25, the court considered the BOP's "other" enumerated factors for identifying extraordinary and compelling reasons, specifically:

> The nature and circumstances of the defendant's offense, his criminal history, comments from victims, unresolved detainers, supervised release violations, institutional adjustment, disciplinary infractions, personal history derived from the presentence investigation report, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and whether release would minimize the severity of the offense.

470 F. Supp. 3d at 526 (citation and internal quotation marks omitted). The court then

"consider[ed] each of these factors and conclude[d] [defendant] fulfills each and every one. Relying on the Bureau of Prisons' own criteria for 'other' extraordinary and compelling circumstances warranting compassionate release, we grant [defendant's] compassionate release motion." *Id.*

Notably, despite a change in sentencing law under the First Step Act making Mr. Adeyemi's sentence longer than it would be had he been sentenced today, the court held nonetheless that "[w]e ultimately conclude Mr. Adeyemi has shown extraordinary and compelling reasons—not due to Mr. Adeyemi's health conditions alone, <u>nor due to a change in sentencing law [alone]</u>, but under the combination of the factors approved and applied by the Bureau of Prisons." *Id.* at 529 (emphasis added). In analyzing the length of sentence and the amount of time served, the district court considered Adeyemi's extraordinary long sentence and the much shorter sentence he would receive if sentenced today. *Id.* at 528. Thus, *Adeyemi* exemplifies a court's ability to grant a sentence reduction due to disparities in sentencing—regardless of whether the disparity is specifically due to intervening change in sentencing law.

### B. Courts Consider Mean and Median Sentences of Defendants with Similar Records.

Finally, courts may consider sentencing disparities among defendants with similar records, by comparing sentences of other persons convicted under the same offense. Specifically, in *United States v. Eccleston*, the court compared the defendant's 417-month sentence to the mean and median sentences of persons convicted of similar crimes, as demonstrated through the most recent United States Sentencing Commission ("U.S.S.C.") Report. No. CR 95-0014 JB, 2021 U.S. Dist. LEXIS 108877, at *143 (D.N.M. June 10, 2021); *see also Babb*, 2021 U.S. Dist. LEXIS 105829, at *32 (D. Md. June 4, 2021) (comparing the defendant's sentence and noting it was "significantly longer" than other federal sentences according to the U.S.S.C. report average and granting his

11

reduction in sentence); *Haynes*, 456 F. Supp. 3d at 500 (comparing Haynes' sentence to the average sentences of defendants with the same crimes through statistics compiled by the U.S.S.C. and granting his reduction in sentence). In *Eccleston*, the defendant had been convicted of two firearm counts to be served consecutively and robbery counts to be served concurrently. *Eccleston*, 2021 U.S. Dist. LEXIS 108877, at *143. After determining the mean and median sentence length for robbery and firearm offenses based on the report, the court added these amounts together as a proxy for Eccleston's sentences being served consecutively. The court then concluded that added together, the mean and median sentence for defendants who committed similar crimes today would be 209 and 170 months, respectively, which was substantially shorter than Eccleston's 417-month sentence. This finding weighed in favor of the court's decision to modify his sentence from 417 months to 228 months. *Id.* at *149.

## III. "EXTRAORDINARY AND COMPELLING REASONS" WARRANT A REDUCTION IN MR. HAMMOUD'S SENTENCE.

### A. Mr. Hammoud's 30-Year Sentence Is Vastly Disproportionate in Comparison to Other Defendants Sentenced to Less than Five Years For Similar Crimes.

Mr. Hammoud has been imprisoned over twenty-one years, despite being convicted exclusively for nonviolent crimes for which the government did not identify a victim. This Court sentenced him to the available statutory maximum of 240 months on the money laundering counts and the available statutory maximum of 120 months on the material support counts. *Id.* Sentencing Hr'g Tr., vol. 2, 238-39, Case No. 3:00-cr-00147, ECF # 1150 (June 28, 2011). Following the guidance of cases such as *McCoy* and *Eccleston*, the court should, therefore, compare Mr. Hammoud's sentence to the corresponding crime average sentences from the latest U.S.S.C. report and add together the mean and median sentences for the groupings of Mr. Hammoud's crimes conviction sentenced consecutively. *Cf.*, 2021 U.S. Dist. LEXIS 108877, at *143.

The 2020 U.S.S.C. report reveals that the mean sentence for money laundering convictions

was 58 months and the median 34 months.  Pearkes Decl. Ex. 6, at 9.  For National Defense

crimes[9]—the category encompassing material support crimes—the mean sentence was 38 months

and the median was 24 months.  *Id.*  Adding these categories together, the mean sentence for a

comparable defendant today would be 96 months and the median 58 months.  These mean and

median sentences include those given to individuals who engaged in violent conduct—of which

Mr. Hammoud did not—including the use of biological and chemical weapons and weapons of

mass destruction.[10]  **Mr. Hammoud's sentence is therefore six times longer than the typical**

**sentence for crimes under these statutes, including those with far worse conduct**.

Further, Mr. Hammoud has already served almost 22 years of his sentence—in itself ***four***

***times*** the typical sentence.  A survey of 82 defendants convicted from 2010 to 2021 under 18

U.S.C. § 2339B—the same material support statute Mr. Hammoud was convicted under—reveals

that the average sentence was only 128.6 months (10.7 years).  *See* Pearkes Decl. Ex. 6, at 3;

Pearkes Decl. Ex. 4, at Ex. A.  Only 2.44% of all cases resulted in a sentence of over 20 years, and

0% of cases going to trial (as Mr. Hammoud did) resulted in a sentence of over 20 years.

Mr. Hammoud's sentence and time served are multiple orders of magnitude longer than

sentences for comparable defendants.  Mr. Hammoud's sentence exceeds any reasonable or just

sentencing metric.  In hindsight and with the benefit of Mr. Hammoud's record of achievement

and moderation while imprisoned, there is no objective factor to justify the continuation, and

indeed the exacerbation of, the disparity.  In *McCoy*, the court granted a sentence reduction upon

reasoning that "the 'incredible length of the 32-year mandatory sentence imposed,' which far

---

[9] *See* Pearkes Decl. Ex. 6, at A-8 (defining "National Defense" crimes as including "treason, sabotage, espionage, evasion of military service, prohibited financial transactions and exports, providing material support to designated foreign terrorist organizations, nuclear, biological, and chemical weapons, and weapons of mass destruction").

[10] *See supra* note 9 definition of "National Defense" crimes included in the comparison.

exceeded that necessary to 'achieve the ends of justice.' If sentenced today . . . McCoy likely would be subjected to less than half that sentence." 981 F.3d at 278 (citation omitted). Mr. Hammoud's 30-year sentence far exceeds the needs of justice, and Mr. Hammoud likely would be subject to less than half that sentence today. *Cf.*, *McCoy*, 981 F.3d at 278.

### B. Mr. Hammoud's U.S.S.G. § 3A1.4 Terrorism Sentence Enhancement Makes His Sentence Even More Disproportionate.

Under U.S.S.G. § 3A1.4 (a terrorism sentence guideline adjustment), the increase in Mr. Hammoud's criminal history, which the Sentencing Commission "legislated," is more egregious and with less factual basis than the stacking under § 924(c) which was the basis of Mr. McCoy's sentence. Like Mr. McCoy, Mr. Hammoud had no prior criminal record. Yet, McCoy had engaged in violent behavior—two robberies while brandishing a gun. Moreover, the Sentencing Commission had much more data on recidivism of those convicted of multiple robberies than those convicted of terrorism crimes.

In the case of material support, the Sentencing Commission had no data to support the imposition of an increase to criminal history category VI and the increase of 12 to the offense level. *See United States v. Alhaggagi,* 372 F. Supp. 3d 1005, 1014 (N.D. Cal. 2019) (citations omitted) (noting "[i]t is also inappropriate to automatically increase a defendant's criminal history based on unsubstantiated assumptions about recidivism. 'The terrorism enhancement is not backed by any empirical evidence.'"). This is particularly true in the case of a non-violent offender, like Mr. Hammoud, where there was no evidence presented to support a connection to a violent act— judicial facts recent district courts decisions have relied upon to reject that increase. *See id.* at 1015 (finding "[t]he terrorism enhancement's treatment of criminal history flies in the face of fair, individualized sentencing" and refusing to apply it); *United States v. Jumaev,* 2018 U.S. Dist. LEXIS 119916, 2018 WL 3490886 at * 12 (D.C. Col. July 18, 2018) (citation omitted) (finding

14

that "[t]he Terrorism Enhancement, when applied, 'takes a wrecking ball' to the initial Guidelines range," and declining to apply it); *United States v. Dais*, 482 F. Supp. 3d 800, 802-03 (E.D. Wis. 2020) (finding § 3A1.4 is "contrary to the purposes of sentencing in 18 U.S.C. § 3553(a), including the notion that sentences should be individualized and proportionate, and that we should distinguish between the worst offenders and those who are less dangerous," and refusing to apply it).[11] In short, the increases in Offense Level and Criminal History that are the core of § 3A1.4 and defined Mr. Hammoud's sentence are exactly the type of mechanistic sentencing—that reflexively defines an individual as irredeemable with no supporting data—the First Step Act is intended to replace with compassion and reasoned application of the § 3553 factors.

Like Mr. McCoy, Mr. Hammoud was sentenced in his 20's, and at the age of 48 has spent nearly half his life in prison. *See McCoy*, 981 F. 3d at 286. Similar to the many courts that have granted compassionate release based on disparity in sentencing, this Court should grant Mr. Hammoud compassionate release. *See Redd*, 444 F. Supp. 3d at 722; *Wilkerson*, 2021 U.S. Dist. LEXIS 52048, at *5; *Babb* 2021 U.S. Dist. LEXIS 105829, at *29; *Haynes*, 456 F. Supp. 3d at 500; *Hope*, 2020 U.S. Dist. LEXIS 86395, at *3; *Brown*, 457 F. Supp. 3d at 699; *Robles*, 2021 U.S. Dist. LEXIS 150046, at *33; *McDonell*, 513 F. Supp. 3d at 757; *Adeyemi*, 470 F. Supp. 3d at

---

[11] The *Dais* decision has this further to say about 3A1.4: "Terrorism cases are undoubtedly serious, but automatically increasing a defendant's criminal history to reflect the seriousness of the charged offense seems misguided." 482 F. Supp. 3d at 803. Further, as Judge Kane has noted, material support cases can involve a wide range of conduct, yet § 3A1.4 frequently results in guideline ranges that equal or exceed the maximum statutory sentence, without differentiating between various levels of conduct. *See United States v. Jumaev*, No. 12-cr-00033, 2018 U.S. Dist. LEXIS 119916, at *28-29 (D. Colo. July 18, 2018). Finally, as both Judges have noted, this guideline was enacted pursuant to a congressional directive and absent empirical evidence. *See Alhaggagi*, 372 F. Supp. 3d at 1014-15. Such guidelines do not exemplify the Sentencing Commission's exercise of its characteristic institutional role, *see Kimbrough v. United States,* 552 U.S. 85, 109 (2007), and are generally entitled to less respect, *see United States v. Reyes-Hernandez*, 624 F.3d 405, 418 (7th Cir. 2010).

520.

### C. Terrorist Defendants with Much More Egregious Conduct Have Been Granted Compassionate Release.

The fact that Mr. Hammoud is convicted of a terrorism-related offense should not bar him from compassionate release. In fact, courts have granted numerous motions for compassionate release on grounds such as medical concerns to defendants convicted of terrorism-related charges, including involvement in violent attacks on the United States. *See United States v. Bary*, No. 98-cr-1023 (LAK), at *7 (S.D.N.Y. Oct. 7, 2020) (granting compassionate release to prisoner on medical grounds despite him being involved in the bombing of two United States embassies, resulting in the deaths of hundreds of people); *United States v. Hassoun*, 470 F. Supp. 3d 804 (N.D. Ill. 2020) (granting compassionate release due to COVID-19 to defendant convicted of attempted use of a weapon of mass destruction and malicious attempt to destroy or damage a building using an explosive device and sentenced to a 23 year prison term); *United States v. Rana*, No. 09 CR 830-8, 2020 U.S. Dist. LEXIS 208638, at *2 (N.D. Ill. June 9, 2020) (granting compassionate release on medical grounds to defendant convicted of providing material support for a planned attack against a private newspaper that never transpired). These courts have refused to disqualify these defendants based upon the offense of conviction.

Many defendants with convictions for providing material support to foreign terrorist organizations ("FTOs") and conspiracy to do the same, like Hammoud, have also been granted compassionate release. *United States v. El-Hanafi*, 460 F. Supp. 3d 502, 505 (S.D.N.Y. 2020) (granting compassionate release to defendant convicted of providing material support to a designated terrorist organization (Al Qaeda) and conspiring to do the same); *United States v. Hasanoff*, 10-cr-162, 2020 U.S. Dist. LEXIS 199816, 2020 WL 6285308 (S.D.N.Y. Oct. 27, 2020) (granting compassionate release to co-defendant of El-Hanafi, convicted of conspiracy to provide

16

material support to Al Qaeda in the form of currency, monetary instruments, assistance in computer matters and personnel, and sentenced to 216 months); *United States v. Hawo Mohamed Hassan*, No. 10-187 (02) (MJD), 2020 U.S. Dist. LEXIS 165638, at *1 (D. Minn. Sep. 10, 2020) (granting compassionate release to defendant convicted of conspiracy to provide material support to an FTO). That Mr. Hammoud was convicted for providing material support to a FTO should therefore not prevent this court from granting him early release.

Further, in granting compassionate release when the underlying conviction is material support, the court can consider whether the amount of money provided to terrorism "pales in comparison to other terrorism financing cases" that were granted compassionate release. *United States v. Amina Farah Ali*, No. 10-187 (01) (MJD), 2021 U.S. Dist. LEXIS 73320, at *6 (D. Minn. Apr. 16, 2021) (granting compassionate release at time served to defendant who provided approximately $15,000 and shipments of clothing, and was sentenced to 240 months imprisonment). Compassionate release has also been granted where the material support conviction was based on "providing tens of millions of dollars to Hezbollah." *Id.* (citing *United States v. Tajideen*, 1:17-cr-046 (D.D.C. May 28, 2020)). In contrast, Mr. Hammoud was convicted for merely sending $3,500 for the benefit of Hezbollah. In short, Mr. Hammoud is less culpable than many defendants that have been granted compassionate release.

**D.      Under § 3553(a) Mr. Hammoud Is Qualified for Release Based Upon Time Served, and Mr. Hammoud is Not a Danger to the Community, Consistent with U.S.S.G. § 1B1.13.**

In addition to finding extraordinary and compelling circumstances, the Court must find that the reduction conforms with "applicable policy statements issued by the Sentencing Commission," and the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A). In considering Sentencing Commission Policy statements, courts look to United States Sentencing Guideline § 1B1.13, which largely reiterates other requirements from

17

§ 3582(c)(1), and adds that "the defendant is not a danger to the safety of any other person or to the community" 18 U.S.C.G. § 1B1.13; *McCoy*, 981 F.3d at 276. In conducting this analysis, courts typically consider risk of recidivism and disciplinary incidents as shown through BOP reports and coursework done while in prison. *See, e.g. Haynes*, 456 F. Supp. At 517; *Babb*, 2021 U.S. Dist. LEXIS 105829, at *47-49.

This brief does not focus on all of the factors set forth in 18 U.S.C. § 3553(a), which are largely duplicative of discussion throughout the brief. These factors, as applied to Mr. Hammoud, include: (1) the nature of the offense and the defendant's characteristics (here Mr. Hammoud is non-violent, youth, and first offense); (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment (this goal already fully served by a sentence over 21 years imprisonment that is far above the mean and median sentence); (3) the kinds of sentences available and the applicable Guidelines range (without application of § 3A1.4, discussed herein, his sentence served is far above the Guidelines range); (4) any pertinent Commission policy statements (as discussed, 18 U.S.C.G. § 1B1.13, cmt. n.1 explains that "extraordinary and compelling" reasons warrant release, including "[o]ther [r]easons"); (5) the need to avoid unwarranted sentence disparities (both as to his co-defendants and others charged with similar offenses, the time served is already disparately high); and (6) the need to provide restitution to victims (no victims were identified). 18 U.S.C. § 3553(a). As also discussed herein, analyzing these factors in light of Mr. Hammoud's commendable record while incarcerated and his health issues further supports this petition.

Mr. Hammoud is not a danger to the community, and his risk of recidivism is immeasurably low. In fact, Mr. Hammoud has been an exemplary inmate for the over 21 years he has been incarcerated. Mr. Hammoud has had a positive influence on other inmates. In an article written

by an inmate at Terra Haute and published through The Muslim Link, Mr. Hammoud was described as "an inspiration of hope" to other inmates. Pearkes Decl. Ex. 3; *Babb*, 2021 U.S. Dist. LEXIS 105829, at \*49 (considering the defendant's leadership role as a peer facilitator and position as a role model and resource to other inmates supporting the court's decision to reduce his sentence). Other than a single incident using a cell phone to call his elderly mother living in Lebanon (who was unable to visit due to her illness), Mr. Hammoud has faced no material disciplinary issues. *See Adeyemi*, 470 F. Supp. 3d at 525 (finding the defendant's "four disciplinary infractions," including "possession of a cell phone," did not negatively weigh against the defendant when the court granted motion to reduce his sentence from 385 months (32 years) to time served, or 165 months (13.8 years)). Quite the opposite, Mr. Hammoud has used his time in prison to further his education, nearing completion (in one semester) of an Associate's degree in Psychology. Pearkes Decl. Ex. 2; *McCoy*, 981 F.3d at 278 (considering the defendant's educational achievements in prison as support for reducing his sentence). Mr. Hammoud's Inmate Education Transcript shows that he has completed over 70 educational courses, ranging in topics from Hyperinflation to the Treaty of Paris, Physics, Biology, and Philosophy. *Id*.

Additionally, on April 21, 2021, Mr. Hammoud's Case Manager, Rebekka Eisele, completed the Male Custody Classification Form with respect to Mr. Hammoud and classified him as a "level 6" low-security prisoner and wrote that he poses "minimum risk." Pearkes Decl. Ex. 1.

The fact that Mr. Hammoud, now in his middle-age, will be deported to Lebanon upon release, together with his demonstrated good behavior and pursuit of education, further reduces any risk of recidivism. *See Hassoun*, 470 F. Supp. 3d at 806 (acknowledging Hassoun had engaged in a "malicious attempt to destroy or damage a building using an explosive device," but concluding

19

he "has demonstrated that he has taken positive steps while serving his time in custody these past almost 10 years, and has agreed to removal to Lebanon," and granting sentence reduction to time served). In contrast, many of the prisoners in Terre Haute are high- and maximum-security prisoners.

Mr. Hammoud's educational achievements and minimal risk, as designated by the BOP, further bolster Mr. Hammoud's request for compassionate release. *Amina Farah Ali*, 2021 U.S. Dist. LEXIS 73320, at *5 (granting compassionate release on COVID-19 grounds to a material support defendant and reasoning that "Defendant does not pose a danger to the community if released" because "[t]he BOP assigned Defendant a Minimum Risk Recidivism Level" and "[w]hile serving her sentence, Defendant has completed a number of educational programs and has obtained her GED"). Mr. Hammoud's educational achievements will prepare him for gainful employment out of prison. Indeed, three different businesses in Lebanon in the fields of renewable energy and manufacturing have submitted letters stating that they would employ Mr. Hammoud upon his release and return to Lebanon. Pearkes Decl. Ex. 7. *See*, *Redd*, 444 F. Supp. 3d at 730 (noting that defendant's letter of an open offer of employment at a security firm, should he be released, supported the court's decision to reduce his sentence).

As the court in *McCoy* considered the prisoner's "rehabilitation, shown through his many educational and vocational achievements" in reducing McCoy's sentence, we urge this Court to consider Mr. Hammoud's impressive educational accomplishments and low risk of recidivism. 981 F.3d at 278.

### E. Hammoud Additionally Suffers from an Ongoing Medical Condition that Has Not Been Resolved in Prison.

Another factor courts consider in analyzing applicable § 3553(a) sentencing factors is whether the sentence imposed "provide[s] the defendant with needed . . . medical care, or other

correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D); *see Rana,* 2020 U.S. Dist. LEXIS 208638, at *11 (noting this § 3553(a) factor further warranted a sentence reduction to provide medical care to the defendant).

Since at least May 2020, Mr. Hammoud has made several requests to see a dermatologist to help him treat his skin condition. In his complaints filed with the prison, Mr. Hammoud has described his skin condition as "tantamount to torturing" and that he "writhes in pain unable to sleep." For nearly one year, however, the prison sent him to general practitioners and nurses. As a direct result of not receiving appropriate medical treatment, Mr. Hammoud suffered excruciating pain throughout the summer and early fall of 2020. In April 2021, the prison finally arranged for Mr. Hammoud to see a dermatologist, approximately a year after his first request. However, the prison did not give the dermatologist Mr. Hammoud's medical records, which documented the severe flare-ups he had experienced the previous summer and early fall. In addition, his skin condition was tempered by the cool weather at the time of the visit. The dermatologist was thus unable to evaluate his condition and prescribe him an appropriate treatment. He has experienced the same painful flare-ups this past summer. Consequently, the BOP has not provided him with medical treatment in an effective manner, and granting compassionate release will allow Mr. Hammoud to get the medical treatment he needs.

## CONCLUSION

Mr. Hammoud meets the requirement for "extraordinary and compelling reasons" warranting compassionate release pursuant to under 18 U.S.C. 3582(c)(1)(A). Mr. Hammoud's 30-year sentence is substantially longer than comparable sentences of prisoners sentenced for similar crimes, even including violent offenders. Upon release, Mr. Hammoud would be deported to Lebanon, be gainfully employed, and have access to appropriate medical treatment to treat his skin condition. We respectfully ask the Court to give Mr. Hammoud what remains of his life by

21

reducing his sentence to time served.

Dated: February 11, 2022            Respectfully submitted,

                                                  /s/ James P. McLoughlin, Jr._____
James P. McLoughlin, Jr.
Raquel Macgregor Pearkes
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Phone: 704-331-1000
Fax: 704-331-1159
jimmcloughlin@mvalaw.com
raquelpearkes@mvalaw.com

COUNSEL OF RECORD FOR
DEFENDANT-PETITIONER MOHAMAD
HAMMOUD

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2022, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to counsel of record listed as receiving e-mail service.  It is further certified that, on this day, the foregoing was sent via regular U.S. mail, postage prepaid, and addressed to the following counsel of record not receiving electronic notifications via CM/ECF:

Anthony S. Murry
U.S. Dept. of Justice
Criminal Division
Terrorism & Violent Crime Section
601 D. Street, NW Ste. 6500
Washington, DC  20530

Stanley L. Cohen
119 Avenue D
3rd Floor
New York, NY  10009

Dated:  February 11, 2022

/s/ James P. McLoughlin, Jr.