# EXHIBIT A

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CASE NO. 3:00-CR-147-GCM-DSC-1

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>**MOHAMAD YOUSSEF HAMMOUD,**<br>**aka Ali A.A. Abousaleh,**<br>**aka Ali A.A. Albousaleh,**<br><br>**Defendant.** | **REPLY IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |

The Government misstates Mr. Hammoud's position and glosses over the ample support Mr. Hammoud provides to demonstrate that his sentence is disproportionately long compared to similarly situated defendants. Mr. Hammoud's argument is supported both by: (a) the average sentences of over 100 defendants convicted of the same or similar crimes[1]—including those convicted of violating 28 U.S.C. § 2339B[2]—and (b) case examples of individuals convicted on terrorism-related charges for violent acts who have been granted compassionate release. *See* Hammoud Memo in Support of Mot. to Reduce Sentence ("Hammoud Memo") at 12-13, 16-17, ECF No. 1186. The average sentences and case examples undermine the Government's argument. Stated differently, Mr. Hammoud has drawn the Court's attention to the most apt points of comparison to demonstrate that Mr. Hammoud's sentence is disproportionate and that he is deserving of compassionate release. The Government, instead, hangs its hat on two new cases, both of which are materially distinguishable from Mr. Hammoud's.

---

[1] *See* Pearkes Decl. Ex. 6, at 9, ECF No. 1187-6 (showing averages compiled from 165 defendants convicted of national defense crimes, the category encompassing material support crimes, in the fiscal year 2020).
[2] *See* Hammoud Memo at 13, ECF No. 1186 (citing Pearkes Decl. Ex. 6, at 3, ECF No. 1187-6; Pearkes Decl. Ex. 4, at Ex. A, ECF No. 1187-4).

## I. THE GOVERNMENT MISREPRESENTS MR. HAMMOUD'S POSITION AND CREATES STRAWMAN ARGUMENTS.

### A. Mr. Hammoud Relies on Both National Defense and Material Support Sentencing Averages to Demonstrate that His Sentence Is Disproportionately Long.

The Government misrepresents that Mr. Hammoud relies solely on national defense crime statistics and not material support sentencing statistics. Resp. in Opp'n of Mot. for Compassionate Release at 6, ECF No. 1190. In fact, Mr. Hammoud relies on both sets of statistics. First, he compared his sentence to the most reputable source of crime statistics encompassing Section 2339B convictions (i.e., "national defense" crimes) and then added the average money laundering conviction from the United States Sentencing Commission ("U.S.S.C.") Report statistics because his sentence is based on *both* the Section 2339B and the Section 1956 convictions (120 months for material support and 240 months for money laundering). *See* Hammoud Memo discussion at 12, ECF No. 1186. This approach creates an accurate point of comparison for similar defendants and is supported by case law. *United States v. Eccleston*, No. CR 95-0014 JB, 2021 U.S. Dist. LEXIS 108877, at *143 (D.N.M. June 10, 2021) (comparing the defendant's sentence length to the average sentences of persons convicted of similar crimes and adding the sentences together, using the categories and statistics provided by a U.S.S.C. Report); *see also Babb v. United States*, No. ELH-04-0190, 2021 U.S. Dist. LEXIS 105829, at *32 (D. Md. June 4, 2021) (comparing defendant's sentence to U.S.S.C. report averages); *United States v. Haynes*, 456 F. Supp. 3d 496, 500 (E.D.N.Y. 2020) (same).

Further, Mr. Hammoud surveyed 82 defendants convicted under 18 U.S.C. § 2339B (often accompanied by convictions on other charges as well) from 2010 to 2021. Hammoud Memo at 13, ECF No. 1186(citing Pearkes Decl. Ex. 6, at 3, ECF No. 1187-6; Pearkes Decl. Ex. 4, at Ex. A, ECF No. 1187-4). The average sentence—approximately 11 years—further supports Mr. Hammoud's position that his 30-year sentence is drastically disproportionate. The Government's

point of distinction, therefore, supports *Mr. Hammoud's* position.

The Government attempts to undercut Mr. Hammoud's position by noting that the "national defense" category of crimes includes failure to register and evasion of military service. Having noted this minor point, the Government makes no effort to calculate the sentencing impact of this fact or to provide a statistical critique of Mr. Hammoud's calculation. The most likely reason for the Government's omission is that the majority of crimes in this category are tied to serious crimes against the United States involving violent activity, such as the use of nuclear, biological, and chemical weapons, weapons of mass destruction, treason, sabotage, and espionage. Pearkes Decl. Ex. 6, at A-8, ECF No. 1187-6. Many of these crimes trigger severe sentencing enhancements under U.S.S.G. Chapter Two, Part M. *See*, Quick Facts: National Defense Offenders, U.S. Sentencing Commission Fiscal Year 2020 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/National_ Defense_FY20.pdf.) If anything, grouping Mr. Hammoud—who did not commit, plan, or seek to finance any violent act—with these prisoners should result in average sentences *longer* than Mr. Hammoud's, not shorter. Instead, the average national defense crime sentence (a mean of 38 months and median of 24 months) is a sentence six times shorter than Mr. Hammoud's. *See* Hammoud Memo discussion at 13, ECF No. 1186.

### B. Mr. Hammoud's Argument Goes Beyond the "Bare Statistics" Claimed by the Government.

The Government also distorts Mr. Hammoud's argument by claiming that his "bare statistics do not say anything about the details of the offenses." Resp. in Opp'n of Mot. for Compassionate Release at 6,ECF No. 1190. On the contrary, Mr. Hammoud provides eight specific examples of defendants convicted on terrorism-related charges, including material support charges, who were granted compassionate release; each example cited contained a parenthetical

3

describing each offense.[3]  *See* Hammoud Memo at 16-17, ECF No. 1186 (citing *United States v. Bary*, No. 98-cr-1023 (LAK), 2020 U.S. Dist. LEXIS 186310, at *7 (S.D.N.Y. Oct. 7, 2020); *United States v. Hassoun*, 470 F. Supp. 3d 804 (N.D. Ill. 2020); *United States v. Rana*, No. 09 CR 830-8, 2020 U.S. Dist. LEXIS 208638, at *2 (N.D. Ill. June 9, 2020); *United States v. El-Hanafi*, 460 F. Supp. 3d 502, 505 (S.D.N.Y. 2020); *United States v. Hasanoff*, 10-cr-162, 2020 U.S. Dist. LEXIS 199816, 2020 WL 6285308 (S.D.N.Y. Oct. 27, 2020); *United States v. Hawo Mohamed Hassan*, No. 10-187 (02) (MJD), 2020 U.S. Dist. LEXIS 165638, at *1 (D. Minn. Sep. 10, 2020); *United States v. Amina Farah Ali*, No. 10-187 (01) (MJD), 2021 U.S. Dist. LEXIS 73320, at *6 (D. Minn. Apr. 16, 2021); *United States v. Tajideen*, 1:17-cr-046 (D.D.C. May 28, 2020)).[4]  In contrast, the Government lists two new cases and no statistical analysis to support its contention that Mr. Hamoud's sentence is not disproportionate.  *See* Resp. in Opp'n of Mot. for Compassionate Release at 7, ECF No. 1190.  Further, as demonstrated below, these newly cited cases are distinguishable from Mr. Hammoud's.

## II. THE GOVERNMENT'S TWO NEWLY CITED CASES INVOLVE SUPPORT OF VIOLENT TERRORIST ACTIVITY AND ESPIONAGE, UNLIKE MR. HAMMOUD.

The Government relies on two inapposite cases to assert that Mr. Hammoud's sentence is proportionate. Resp. in Opp'n of Mot. for Compassionate Release at 7, ECF No. 1190 (citing *United States v. Kourani*, 6 F.4th 345, 348 (2d Cir. 2021); *United States v. Rahim*, 860 F. App'x 47, 58 (5th Cir. 2021)).  In stark contrast to Mr. Hammoud, however, the defendants in these two cases supported violent terrorist activities or engaged in repeated acts of espionage against the United States.  The conduct underlying Mr. Kourani's 480-month sentence involved directly

---

[3] Ironically, the only "details of the offenses" provided by the Government in support of its two newly cited case examples also come from parentheticals. Resp. in Opp'n of Mot. for Compassionate Release at 7, ECF No. 1190.
[4] The unpublished order granting compassionate release is available on the PACER docket at ECF No. 264.

assisting terrorist organizations by conducting covert intelligence-gathering missions. Specifically, evidence at trial showed that Mr. Kourani, who was trained in military tactics, became a member of the Islamic Jihad Organization ("IJO").  He engaged in conduct including:

- Travelling to China to develop relationships IJO could rely upon to obtain ammonium nitrate to be used as an "explosive precursor chemical";

- Targeting at least four U.S. government facilities containing "numerous sensitive features, such as government and military personnel, classified information, Joint Operations Command Centers used in connection with responses to terrorist attacks, and childcare facilities";

- Conducting surveillance at JFK and Toronto Pearson International airports and providing surveillance information to an IJO operative during Mr. Kourani's visits to Lebanon;

- Assisting in the targeting of Israelis in New York for assassination; and

- Identifying and providing IJO with information about possible weapons suppliers.[5]

Mr. Kourani followed instructions to carry correspondence to IJO operatives and conducted intelligence-gathering missions for the IJO over seven years, including by identifying locations where weapons could be stockpiled.  *Kourani*, 2021 U.S. App. LEXIS 22201, at *3-6.

Mr. Rahim served a 360-month sentence for recruiting internet users for terrorism through an online ISIS propaganda platform, in which he served on various committees.  *Rahim*, 860 F. App'x at 50.  Rahim further counseled followers to commit terrorist attacks in ISIS's name and "even took personal responsibility for the January 1, 2017 attack in Istanbul, Turkey" through incitement to his followers.  *Id.* at 51.

Mr. Hammoud, in contrast, was convicted of giving $3,500 to Said Harb that was intended for Hezbollah that Mr. Harb gave to his mother. *United States v. Hammoud*, 381 F.3d 316, 326

---

[5] The Government's Sentencing Submission at 10-13, ECF No. 135, *United States v. Kourani,* 117-cr-00417-AKH, (November 26, 2019).

(4th Cir. 2004) (*en banc*) (Wilkins, C.J., majority), *vacated on other grounds*, 543 U.S. 1097 (2005). Mr. Hammoud was ***not*** involved in planning or enabling any violence. *Id.* at 384 (Gregory, J., dissenting) (emphasis in original) ("[A]t the jury charge conference, [Judge Mullen] examined the language of Count 72 of the indictment, which alleged that Hammoud 'used his position as a leader . . . to foster support and raise funds for violent Hizballah activity,'… and stated: 'There was *no proof* he raised funds for violent Hizballah activity. I have a problem leaving that in when you *don't have any proof on that*. But it's part of the indictment. I can't just take it out.'"). The Government's two cases are not appropriate points of comparison.

In addition to all of these material distinctions, a far more important difference is the **timing** of the sentences. Kourani and Rahim were sentenced in 2019. Mr. Hammoud has already spent over twenty-one years in federal custody where he has "largely performed well,"[6] with no indication at all that he (now 48 years old) will be a recidivist. After twenty-one years, the United States and this Court have cause to exercise mercy for no other reason than that the statute permits it, and it is the right thing to do.

However, there is another basis for granting mercy. Senior Judge Charles Breyer's discussion in *United States v. Alhaggigi*, 372 F. Supp. 3d 1005, 1013-16, 2019 U.S. Dist. LEXIS 37889, 2019 WL 1102991 (N.D. Cal. March 8, 2019) is one we request the Court consider. Senior Judge Breyer served as Vice-Chair of the United States Sentencing Commission from 2013 to 2016 and is currently the acting Chair. Writing about Section 3A1.4 and the Sentencing Guidelines, Judge Breyer opined, "'The terrorism enhancement takes a wrecking ball to this carefully constructed edifice.'" *Id.* 1013 (quoting George D. Brown, Punishing Terrorists: Congress, the Sentencing Commission, the Guidelines, and the Courts, 23 Cornell J.L. & Pub. Pol'y 517, 520

---

[6] The Government concedes in its brief that "The United States agrees that Hammoud has largely performed well in prison . . . ." Resp. in Opp'n of Mot. for Compassionate Release at 7, ECF No. 1190.

(2014)). Specifically, Senior Judge Breyer pointed out the contradiction that an increase in offense level is intended to capture the seriousness of the offense, yet the increase in the criminal history imposed by the guideline is supported by no reliable data and, to the contrary, there is "some evidence that first-time terrorism offenders are no more likely to re-offend than individuals who commit other crimes." *Id.* 1015. Most importantly, "the terrorism enhancement's treatment of criminal history flies in the face of fair, individualized sentencing…." *Id.* Within weeks we will reach the twentieth anniversary of Mr. Hammoud's trial. Through the lens of those twenty years, Mr. Hammoud has demonstrated, by his conduct, that he is deserving of the consideration that Senior Judge Breyer is right, and he is not a risk. Mr. Hammoud has paid for his crimes, and he should be permitted to go home and live in peace.

<b>CONCLUSION</b>

For the foregoing reasons, Mr. Hammoud respectfully requests this Court grant his Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) by reducing his sentence to his 21 years of time served.

Dated: This the __ day of April, 2022.          Respectfully submitted,

/s/ Raquel Macgregor Pearkes___
James P. McLoughlin, Jr.
Raquel Macgregor Pearkes
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Phone: 704-331-1000
Fax: 704-331-1159
jimmcloughlin@mvalaw.com
raquelpearkes@mvalaw.com

COUNSEL FOR MOHAMAD
HAMMOUD

7

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2022, the foregoing **REPLY IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** was e-filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to counsel of record listed as receiving e-mail service. It is further certified that, on this day, the foregoing was sent via regular U.S. mail, postage prepaid, and addressed to the following counsel of record not receiving electronic notifications via CM/ECF:

Anthony S. Murry
U.S. Dept. of Justice
Criminal Division
Terrorism & Violent Crime Section
601 D. Street, NW Ste. 6500
Washington, DC  20530

Stanley L. Cohen
119 Avenue D
3rd Floor
New York, NY  10009

Dated:  This the 21st day of April, 2022

/s/ Raquel Macgregor Pearkes

8