# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:00-CR-00147-GCM-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **ORDER** |
| MOHAMAD YOUSSEF HAMMOUD, | |
| Defendant. | |

**THIS MATTER** comes before the Court on Mohammad Youssef Hammoud's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 1185]. The government filed a response. ECF No. 1190. Hammoud filed a reply after seeking leave to do so. ECF No. 1191. A hearing on the motion was held on November 21, 2022. For reasons explained in more detail below, the Court will grant the motion in part.

## I. BACKGROUND

Mohammad Youssef Hammoud, age 49, is a Lebanese citizen serving a 30-year prison sentence for providing material support to a terrorist organization, among numerous other charges. From March 1996 to July 2000, Hammoud and ten others orchestrated a cigarette-trafficking scheme designed to support Hezbollah,[1] a Lebanese Shia terrorist organization.[2] ECF

---

[1] The organization is also sometimes spelled as "Hizballah" or "Hizbullah." Whatever the spelling, the name is a transliteration for the Arabic word meaning "Party of God."
[2] The Department of State designated Hezbollah a foreign terrorist organization on October 8, 1997. *See* U.S. Dep't of State, *Foreign Terrorist Organizations*, https://www.state.gov/foreign-terrorist-organizations (last visited June 27, 2022).

The organization has a complex role in Lebanese politics: Hezbollah is an active political party and provides extensive social services separate from its armed activities. *See* Kali Robinson, Council on Foreign Relations, *What Is Hezbollah?*, https://www.cfr.org/backgrounder/what-hezbollah (last updated May 25, 2022). But the organization also perpetrates terrorist attacks and

No. 1163 ¶ 70. The co-conspirators purchased discounted cigarettes in North Carolina and illegally sold them in Michigan, a state with significantly higher tobacco taxes. *Id.*

Hammoud was a leader in the organization, recruiting drivers for the scheme and arranging for the storage of contraband cigarettes. *See id.* ¶ 74. On several occasions, Hammoud personally loaded cigarettes or transported them to Michigan. *See, e.g.*, *id.* ¶ 72. Hammoud also opened credit cards and bank accounts in fictitious names, using them to purchase more cigarettes. *Id.* ¶ 72. According to the United States Probation Office, Hammoud's involvement in the conspiracy inflicted a tax loss of more than $4 million on the state of Michigan. *Id.* ¶ 74.

Hammoud's conscious object was to support Hezbollah. *See id.* ¶ 75. He reportedly presided over frequent prayer meetings between 1995 and 2000 to raise funds for the organization, speaking about Hezbollah operations in Lebanon and screening Hezbollah propaganda. *Id.* And Hammoud communicated directly with Hezbollah operatives, including Sheikh Abbas Harake, a senior military commander. *Id.* On one occasion, Hammoud sent $3,500 of his own money to Sheikh Harake. *Id.*

A federal grand jury returned a 78-count indictment against the various conspirators. ECF No. 590 (second superseding indictment). Hammoud went to trial, and was convicted on 14 counts by a jury: (1) marriage fraud, in violation of 8 U.S.C. § 1325(c); (2) false statements to immigration authorities, in violation of 18 U.S.C. § 1546(a); (3) conspiracy to distribute contraband cigarettes, in violation of 18 U.S.C. §§ 2342 and 371; (4) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); (5) two counts of distribution of contraband cigarettes, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2342 and 2;

---

furnishes paramilitary forces to armed conflicts in Lebanon and abroad. *See id.*; National Counterterrorism Center, *Terrorist Groups: Hizballah*, https://www.dni.gov/nctc/groups/hizballah.html (last visited June 27, 2022).

(6) two counts of money laundering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1956(a)(1) and 2; (7) conspiracy to unlawfully use counterfeit devices, in violation of 18 U.S.C. § 1029(b)(2); (8) unlawful use of counterfeit access device, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1029(a)(1) and 2; (9) use of unauthorized access devices, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1029(a)(1) and 2; (10); racketeering, in violation of 18 U.S.C. § 1962(d); (11) conspiracy to provide material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B; and (12) providing material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B. ECF No. 829; ECF No. 1163 at 1–2.

At sentencing, the Court imposed a 155-year sentence under the then-mandatory Sentencing Guidelines. ECF No. 906 at 3. The Supreme Court vacated that sentence two years later after deciding *Blakely v. Washington*, 542 U.S. 296 (2004). *Hammoud v. United States*, 543 U.S. 1097, 1098 (2005). On resentencing in 2011, the Court granted a variance and imposed a 30-year sentence. ECF No. 1134 at 3. The parties cross-appealed, and the Fourth Circuit affirmed. *United States v. Hammoud*, 483 F. App'x 865, 867 (4th Cir. 2012). Hammoud has now been imprisoned over 22 years.

On February 11, 2022, Hammoud, through counsel, filed the present motion for a sentence reduction. ECF No. 1185. Hammoud asserted "extraordinary and compelling reasons" for a sentence reduction, arguing that his sentence should be reduced to time served.

## II. DISCUSSION

### a. Compassionate Release Standard

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), authorizes courts to reduce a defendant's sentence on the motion of the defendant if (1) "extraordinary and compelling

3

reasons" warrant a reduction; (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the Section 3553(a) factors merit a reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

Courts presently enjoy significant discretion in determining what qualifies as an "extraordinary and compelling reason" for release. In *United States v. McCoy*, the Fourth Circuit explained that "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." 981 F.3d 271, 284 (4th Cir. 2020) (cleaned up). That is because—moving to the second requirement for granting compassionate release—there currently are no applicable policy statements issued by the Sentencing Commission.[3] *Id*.

Even if a defendant shows "extraordinary and compelling reasons," a trial court must still make an "individualized assessment" of each defendant's sentence, comprising a "full consideration of the defendant's individual circumstances." *Id*. at 286. That assessment revolves around consideration of the so-called § 3553(a) factors. Under the compassionate release statute, courts must consider the factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable" in deciding whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

---

[3] Courts may (but need not) refer to U.S.S.G. § 1B.13, which governs motions for compassionate release filed by the Bureau of Prisons. *McCoy*, 981 F.3d at 282 n.7. The commentary to that section identifies factors like the medical condition of the defendant, the age of the defendant, and family circumstances. *See* U.S.S.G. § 1B.13 cmt. 1.

4

conduct. *See id*. § 3553(a). Courts may also consider, as part of the individualized assessment, a defendant's relative youth at the time of his offense, the length of the sentence that has already been served, and the institutional records and rehabilitative steps taken by each defendant while incarcerated. *McCoy*, 981 F.3d at 286.

### b. Extraordinary and Compelling Reasons

Hammoud identifies two "extraordinary and compelling reasons" for relief: (1) a disparity between his sentence and other sentences for comparable conduct; (2) the disproportionality in his sentence caused by the application of the "terrorism enhancement."[4]

Before engaging the argument, the Court briefly pauses to reflect on the governing standard. The Court is mindful that it has "broad discretion," being permitted to "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (cleaned up); *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). Of course, that discretion is not wholly unbounded, being constrained by the statutory mandate to "find a reason that is both extraordinary and compelling." *United States v. Sepulveda*, 34 F.4th 71, 75 (1st Cir. 2022).

The Court turns to *United States v. McCoy* for guidance. In that case, the Fourth Circuit agreed that it was appropriate to consider two distinct features of defendants' sentences in finding extraordinary and compelling reasons. First was the "sheer and unusual length of the sentences" at issue. And second, it was appropriate to consider the "gross disparity" between the sentences at issue, and those now deemed appropriate.

---

[4] In a single paragraph in the "factual background" section of his brief, Hammoud also briefly asserts that his vulnerability to COVID-19 is a third "extraordinary or compelling reason" for a sentence reduction. ECF No. 1186 at 5. Hammoud states that because he is "approaching 50," he is "at significant risk of severe illness with permanent consequences or death from COVID-19." *Id*. No further elaboration on this point is made. This argument is undeveloped, and the Court deems it waived. See *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) (upholding waiver of a "perfunctory and undeveloped argument").

5

Considering these features in the context of Hammoud's case, the Court is persuaded that Hammoud has demonstrated "extraordinary and compelling reasons." First, Hammoud's 360-month sentence was "sheer and unusual," even after the substantial variance that the Court applied. Hammoud had next to no criminal history. He committed nonviolent crimes. And yet his sentence was significantly more punitive than the mean federal sentence for murder: 215 months for defendants with a criminal history category of I, and 249 months for defendants in category VI.[5] *See* United States Sentencing Commission, *2021 Sourcebook of Federal Sentencing Statistics, Table 28: Length of Imprisonment for Criminal History Category and Type of Crime*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/Table28.pdf (last visited June 29, 2022).

Hammoud's sentence was also grossly disparate compared to what courts now deem appropriate. Much to his misfortune, Hammoud was the first individual ever to be convicted at trial of violating the material support statute, 18 U.S.C. § 2339B. *See* ECF No. 1143, 172:6–8. Courts have since imposed more moderate penalties: In fiscal year 2021, the average sentence for material support was 209 months. *See* United States Sentencing Commission, *Quick Facts: National Defense Offenders*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/National_Defense_FY20.pdf (last visited June 29, 2022). Similarly, according to a survey of cases from 2010 and 2021 offered by Hammoud, the median sentence for individuals convicted at trial under the statute was 180 months.[6] *See* ECF No. 1187-4 at 14.

---

[5] Both categories are relevant because Hammoud's criminal history category—absent the application of U.S.S.G. § 3A1.4—would have been Category I. Because the terrorism enhancement was applied in his case, it was a Category VI.

[6] Hammoud also argues that his sentence should be compared to a hypothetical defendant cobbled together from the average sentences for money laundering and material support. That is

The government does not directly respond to this argument. However, the government argues that Hammoud's sentence is not disproportionate compared to "similarly situated defendants who have been sentenced in the last several years." ECF No. 1190 at 6–7 (citing *United States v. Kourani*, 6 F.4th 345, 348 (2d Cir. 2021) and *United States v. Rahim*, 860 F. App'x 47, 58 (5th Cir. 2021)). The Court is not persuaded that those defendants are similarly situated. As Hammoud correctly observes, the defendants in both cases cited by the government were more closely linked to violent activity. The defendant in *Kourani*, for example, helped to target Israelis in New York for assassination. And the defendant in *Rahim* actively recruited individuals to commit terrorist acts for ISIS. *See* ECF No. 1191-1 at 4–5.

The Court does not suggest, much less hold, that any individual with a long sentence can obtain a sentence reduction by facile reference to sentencing statistics. But Hammoud's case is particularly extraordinary for two reasons. As discussed earlier, Hammoud was the first individual ever to be convicted at trial of violating 18 U.S.C. § 2339B. *See* ECF No. 1143, 172:6–8. His was the first terrorism trial to be held after September 11. *Id*. 185:4–5. In sentencing Hammoud, the Court navigated mostly uncharted waters.

---

because the Court resentenced Hammoud in 2011 by referring to the statutory maximum penalties for those crimes. *See* ECF No. 1143, 238:22–25; 239:1–10 (transcript of resentencing).

The Court agrees with the government, however, that Hammoud's proffered statistics are distorted by the broad inclusion of "national defense crimes," which include material support but also (and predominantly) include less serious offenses. *See* United States Sentencing Commission, *Quick Facts: National Defense Offenders*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/National_Defense_FY20.pdf (last viewed June 29, 2022) (noting that by far the most common "national defense" crime charged is unauthorized export of arms, which has an average sentence of only 27 months).

7

The specter of the terrorism enhancement, U.S.S.G. § 3A1.4, also loomed over Hammoud's sentencing.[7] That provision triggers dramatically-enhanced penalties at sentencing, catapulting a defendant's offense level by 12 points and ratcheting the criminal history category to the highest level, Category VI. In Hammoud's case, the effect of the enhancement on his Guidelines sentence was extreme. His offense level jumped from 34 to 46, and his criminal history category went from the lowest (I) to the highest (VI). ECF No. 1163 ¶¶ 87, 90, 94, 100. As a result, his Guidelines sentence called for life imprisonment, instead of 151–188 months. *Id*. ¶ 115; *see* U.S.S.G. Ch. 5 Pt. A (sentencing table). Although the Court ultimately employed a variance, the Guidelines calculation—heavily weighted by the terrorism enhancement—undoubtedly influenced the sentence that Hammoud received. *See United States v. Wallace*, 515 F.3d 327, 334 (4th Cir. 2008) (noting that a within-guidelines sentence is "presumptively reasonable"); *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006) ("The farther [a sentencing court] diverges from the advisory guideline range, the more compelling the reasons for the divergence must be.")

In sum, the Court finds that the disproportionate and disparate sentence that Hammoud received, coupled with the specifics of his case, constitute "extraordinary and compelling" reasons for a sentence reduction.

### c. Section 3553(a) Factors

---

[7] Hammoud attacks the sentencing enhancement more generally, arguing that it is unsound sentencing policy and an independent "extraordinary and compelling reason." *See* ECF No. 1186 at 14–15. Although the Court agrees that the terrorism enhancement was a salient factor in Hammoud's sentencing, it was not, standing alone, an extraordinary and compelling reason because the Court imposed a variance in lieu of a Guidelines sentence. The Court does not reach the question of whether the application of the terrorism enhancement can constitute an extraordinary and compelling reason for compassionate release.

Because an extraordinary and compelling reason alone is not cause for a sentence reduction, the Court must conduct an "individualized assessment" of the propriety of relief in Hammoud's case.[8] This assessment transpires via application of the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A).

### i. Nature and Circumstances of the Offense

The Court first considers the nature and circumstances of the offense. The offense was undoubtedly very serious: Hammoud was a key leader in a scheme designed to support a foreign terrorist organization. His efforts cost the state of Michigan an estimated $4 million in lost tax revenues, and likely generated substantial sums for Hezbollah for purposes unknown. On the other hand, Hammoud's crimes were nonviolent, and there is no indication that Hammoud planned to engage in violent conduct in the future.

### ii. History and Characteristics of the Defendant

Hammoud's history and characteristics militate in favor of a sentence reduction. Hammoud's criminal history category was VI, but that was solely by the operation of U.S.S.G. § 3A1.4. ECF No. 1163 ¶ 100. In truth, Hammoud had virtually no prior criminal history, save for a single reckless driving conviction. *See id.* ¶ 98. Hammoud also committed his crimes as a fairly young man: He began trafficking cigarettes at the age of 23, an age associated with increased impulsivity and law-breaking. *See, e.g.*, J.C. Oleson, *Risk in Sentencing: Constitutionally Suspect Variables & Evidence-Based Sentencing*, 64 SMU L. Rev. 1329, 1361–62 (2011) (describing criminological research that individuals between fifteen and twenty-five are at the greatest risk of committing crimes).

---

[8] The compassionate release statute also directs the Court to consider applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). At present, there are no such applicable statements. *McCoy*, 981 F.3d at 284.

9

At 49, Hammoud is now at an age associated with significantly decreased recidivism. The reincarceration rate for individuals aged 40 to 49 years is only 17.4 percent. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* 23, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited June 29, 2022). It is only 12.8 percent for offenders aged 50 to 54. *Id*. The risk of recidivism is particularly small for Hammoud, who is subject to an immigration detainer. Upon release from prison, Hammoud will be deported to Lebanon.[9]

Hammoud's conduct in prison also demonstrates significant rehabilitation. In two decades of incarceration, Hammoud has had only five fairly minor infractions.[10] ECF No. 1190-1 at 1. He has completed 93 educational courses and work assignments, *id*., and is on track to complete his associate's degree while incarcerated. *See* ECF No. 1187-2 at 2–3.

Finally, Hammoud suffers from an intolerable skin condition, which causes him excruciating pain. *See* ECF No. 1186 at 21. Since at least May 2020, Mr. Hammoud has made several requests to see a dermatologist to help him treat his skin condition. In his complaints filed with the prison, Mr. Hammoud has described his skin condition as "tantamount to torturing" and that he "writhes in pain unable to sleep." For nearly one year, however, the prison sent him to general practitioners and nurses. As a direct result of not receiving appropriate medical treatment, Mr. Hammoud suffered excruciating pain throughout the summer and early fall of 2020. In April 2021, the prison finally arranged for Mr. Hammoud to see a dermatologist, approximately a year

---

[9] Several Lebanese nationals write to the Court to confirm their willingness to provide him with employment upon release and deportation. ECF No. 1187-7.
[10] Most notably, Hammoud had a 2019 infraction for possessing a hazardous tool and a 2008 infraction for fighting. ECF No. 1190-1 at 1.

10

after his first request. However, the prison did not give the dermatologist Mr. Hammoud's medical records, which documented the severe flare-ups he had experienced the previous summer and early fall. In addition, his skin condition was tempered by the cool weather at the time of the visit. The dermatologist was thus unable to evaluate his condition and prescribe him an appropriate treatment. He has experienced the same painful flare-ups this past summer. Consequently, the BOP has not provided him with medical treatment in an effective manner.

### iii. Revised Sentence

Based on the foregoing discussion, the Court concludes that Hammoud has shown that a sentence reduction is appropriate in his case. It is now incumbent on the Court to determine what sentence is appropriate, given the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes by the defendant, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

Hammoud urges that he should be sentenced to time served. The Court disagrees. A 25-year sentence better reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and deters criminal conduct. In order to better protect the public from further crimes by Hammoud, the Court will order that Hammoud's supervised release conditions include directives (1) to submit to immigration authorities upon release; and (2) if ordered deported, to refrain from reentering the United States, absent express authorization by federal immigration officials. Those conditions are sufficient, but not greater than necessary, to adequately accomplish the sentencing objectives of 18 U.S.C. § 3553(a).

### III. ORDER

**IT IS THEREFORE ORDERED** that:

1. The Motion for Leave to File Reply (ECF No. 1191) is **GRANTED**.

2. The Motion to Reduce Sentence (ECF No. 1185) is **GRANTED IN PART**.

3. Hammoud's term of imprisonment shall be **REDUCED TO 300 MONTHS**.

4. Hammoud's term of supervised release shall remain unchanged. However, Hammoud's release conditions will be **REVISED** to direct (1) that he submits to immigration authorities upon release; and (2) if ordered deported, that he does not return to the United States after deportation, absent express authorization by federal immigration authorities.

**SO ORDERED**.

Signed: November 28, 2022

Graham C. Mullen
United States District Judge